```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              LEXINGTON
```

PHILIP C. WEISS, et al.,        )
                                )
    Plaintiffs,                 )
                                )  Civil Action No. 5:05-527-JMH
v.                              )
                                )
ASTELLAS PHARMA U.S.,           )              **ORDER**
INC., et al.,                   )
                                )
    Defendants.                 )

                      \*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court on the motion for a protective order [Record No. 45] filed by Defendant Astellas Pharma U.S., Inc. ("APUS"). All responses and replies having been filed, this matter is now ripe for review.

### I. BACKGROUND

*A. Procedural Background*

This action arises out of harm to Plaintiff Philip Weiss allegedly caused by the prescription drugs Protopic and Elidel, manufactured and sold by Defendants APUS and Novartis, respectively.[1] The current dispute arises out of a letter sent to counsel for all Defendants by one of Plaintiffs' attorneys, in which he requested that certain categories of documents be retained.[2] APUS filed the instant motion asking the Court to grant

---

[1] Novartis is not a party to this motion. Nor is APUS's parent corporation, Astellas Pharma, Inc., who has been named as a party but, as far as the Court is aware, has not yet been served.

[2] The Court notes that by agreement of the parties, no Rule 26(f) discovery meeting has been held. The parties agreed to stay such a meeting pending the resolution of the motions to dismiss,

a protective order regarding three categories of documents that APUS claims would be burdensome to retain: (1) documents held in foreign countries; (2) documents relating to a drug, Prograf, that Plaintiffs contend is related to Protopic; and (3) documents in the possession of third parties, such as researchers who conducted clinical trials.

In light of the rule that a party generally lacks standing to seek a discovery order on behalf of anyone other than itself, the Court directed APUS to file a supplemental brief.  The Court wrote that "[t]o the extent APUS can demonstrate that the documents at issue are specifically in its possession or control, as opposed to merely being within the control of the Astellas family of entities generally, the Court [would] address the merits of APUS's motion at the [scheduled] hearing."  Otherwise, the Court indicated, the motion for a protective order would be denied.  In response, APUS withdrew its requests relating to the documents maintained in foreign countries and the documents relating to Prograf.  APUS reiterated its position that a protective order should issue regarding the documents in the possession of third parties, but offered no new information or argument on the subject.

B.   *The Third-Party Documents*

The letter Plaintiffs' attorney sent requested, among other things, that documents and materials generated by third-party

---

two more of which have been filed in the last week.

clinical investigators for any studies relating to Protopic be maintained.  The sole explanation of how maintaining such documents would be burdensome comes from an affidavit attached to the initial motion.  Catherine Levitt, an attorney who is an employee of one of the non-party Astellas companies and performs some unspecified legal services for APUS, stated as follows:

> Finally, any relevant documents that regard clinical trial data that were generated by outside clinical investigators are located in APUS' company files, the Investigational New Drug Application, and the New Drug Application.  Compliance with Plaintiffs' request for "all" documents maintained by third-parties would cause APUS, to the extent obligated, a great burden in time in cost, as well as the clinical investigators themselves. APUS has already collected and maintained the pertinent information for the FDA approval process from third-parties.  It would be an even greater cost and time expended from daily business operations to make requests, to the extent obligated, for maintaining documents that are irrelevant or duplicative of already retrieved documents.

Levitt Aff. at ¶ 7.  No other information relating to the documents, or to the burdens of maintaining such documents, appears anywhere in the motion, the reply, or the supplemental brief.

## II. DISCUSSION

*A.  The Standard for Protective Orders*

The Court may issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c). APUS correctly notes that it has the initial burden of showing "good cause" for the protective order.  *See, e.g.*, *Nix v. Sword*, 11

3

Fed. App. 498, 500 (6th Cir. 2001)("The burden of establishing good cause for the protective order lies on the movant."); *Shingara v. Skiles*, 420 F.3d 301, 305-307 (3d Cir. 2005)("It is well-established that good cause must exist to obtain a protective order over discovery materials."). Once good cause has been established, the burden shifts to the party opposing the protective order to show that the discovery is reasonably necessary to his or her ability to proceed. *See Knoll v. Am. Tel. & Telegraph Co.*, 176 F.3d 359, 365 (6th Cir. 1999)(noting that after a valid reason was established by the defendant, it was "plaintiff's burden to offer proof that the protective order would harm his ability to collect the evidence necessary for the prosecution of his case").

*B.   The Absence of Good Cause*

APUS has not met its initial burden, and therefore there is no need to consider whether Plaintiffs have shown that these documents are necessary.³ The Sixth Circuit has held that "[t]o show good cause, a movant for a protective order must articulate *specific facts* showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix*, 11 Fed. App. at 500 (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987))(emphasis added). APUS offers no specific facts, only conclusory assertions. The sole statement

---

³     Nor does the Court need to address Plaintiffs' argument that APUS lacks standing because no discovery has yet been sought.

4

relating to the burden on APUS is the following: "Compliance with Plaintiffs' request for 'all' documents maintained by third-parties would cause APUS, to the extent obligated, a great burden in time in cost . . . . It would be an even greater cost and time expended from daily business operations to make requests, to the extent obligated, for maintaining documents that are irrelevant or duplicative of already retrieved documents." Levitt Aff. at ¶ 7.

While some level of vagueness is inevitable in estimating the burden of discovery (to require perfect specificity would itself be burdensome), APUS has given the Court no specifics about the burden beyond the assertion that the burden would be "great."  There is thus no basis on which the Court can find that APUS has met its initial burden.  APUS is not being forced to produce anything at this point; it has merely been asked to not destroy documents.[4]

Moreover, APUS has never addressed the basic logical contradiction that undercuts all of its requests: If it would be so terribly burdensome to retain these documents in the future, why has APUS retained them in the past?  APUS asserts that retaining the requested documents would interfere with ongoing business operations, but some of the documents go back a decade or more, and there is no explanation why APUS would have retained them for so many years before any Protopic-related actions were filed if

---

[4]   As for Levitt's statement that all "relevant" documents would be in the FDA applications, APUS offers no specifics upon which the Court could judge relevance at this time.

retaining them was interfering with ongoing business operations. What, if anything, has changed to increase the burden is not addressed; again, all that is asserted is that the burden would be great, and such a conclusory assertion is insufficient to warrant the issuance of a protective order.[5]

## CONCLUSION

Although this is APUS's motion, it was Plaintiffs who requested a hearing on the motion. As the Court agrees with Plaintiffs that APUS has not met its burden, there is no need for that hearing to occur.

Accordingly, **IT IS ORDERED**:

(1) That APUS's motion for a protective order [Record No. 45] be, and the same hereby is, **DENIED**.

(2) That the motion hearing scheduled for June 28, 2006 be, and the same hereby is, **SET ASIDE**.

This the 20th day of June, 2006.

---

[5] The Court is making no finding about the significance of the letter from Plaintiffs' counsel to Defendants' attorneys, or about what precise obligations a drug company has with regards to documents in the possession of third-party researchers. The only matter before the Court is APUS's motion for a protective order, and the finding that APUS has failed to meet its burden should not be read to imply that the Court is imposing any affirmative obligations on Defendants beyond those ordinarily imposed by rule and by case law. If Plaintiffs want something more, it is for them to file their own motion.



Signed By:
*Joseph M. Hood*
United States District Judge