UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

| | |
|---|---|
| PHILIP C. WEISS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 5:05-527-JMH |
| v. | ) |
| | ) |
| FUJISAWA PHARMACEUTICAL CO., et al., | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| Defendants. | ) |

** ** ** ** **

Before the Court is Defendant Novartis Pharmaceutical Corporation's ("NPC") motion to dismiss Plaintiffs' claims for strict liability and negligence [Record No. 83]. NPC asserts that under the "Unavoidably Unsafe Products Doctrine," comment k to the Restatement (Second) of Torts § 402A, the manufacturer of a prescription drug cannot be held liable under a product liability theory except to the extent that it negligently failed to provide an adequate warning of the risks associated with the drug. Kentucky courts have not defined the scope of the doctrine. However, a majority of courts in other jurisdictions have found that the doctrine applies only when the prescription drug's benefits outweigh the risks posed by its use. Since this determination requires a full evidentiary hearing, wherein a number of factors must be considered, NPC's motion to dismiss is premature and is therefore denied.

**I.   BACKGROUND**

On or about August 2003, Plaintiff Philip C. Weiss began using Elidel and Protopic to treat atopic dermatitis.[1] Weiss subsequently developed cancer, lymphadenopathy, lymphomas, serious respiratory diseases and other injuries. Plaintiffs allege that these conditions were substantially caused by Weiss' use of Elidel and Protopic. Accordingly, Plaintiffs have asserted a number of products liability claims against NPC, the manufacturer of Elidel, including negligence (Count VI), strict liability for defect (Count IX), strict liability failure to warn (Count X), and negligent failure to warn (Count VII). NPC has moved to dismiss Counts VI, IX, and X of Plaintiffs' Second Amended Complaint on the grounds that they are barred by the "Unavoidably Unsafe Products Doctrine," Restatement (Second) of Torts § 402A cmt. k.

## II.  STANDARD OF REVIEW

It is well settled that a court entertaining a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must liberally construe all facts in the Plaintiffs' complaint and dismiss the action only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

---

[1] Elidel is the trade name under which NPC markets the drug pimecrolimus. Protopic is the trade name under which Fujisawa Healthcare markets the drug tacrolimus. Elidel and Protopic are topical calcineurin inhibitors, drugs prescribed to treat atopic dermatitis. Atopic dermatitis, commonly known as eczema, is a non-life-threatening skin condition that causes an itchy rash and dry, scaly skin. NPC filed the motion to dismiss, so this opinion only addresses the failure-to-warn claims regarding Elidel.

would entitle him to relief." *Fidel v. Farley*, 392 F.3d 220, 226 (6th Cir. 2004).

Whether NPC's motion to dismiss should be granted depends on the scope of the "Unavoidably Unsafe Products Doctrine". If the doctrine applies to all prescription drugs, "strict liability will not obtain if 'proper warning is given, where the situation calls for it.'" *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 761 (Ky. 2004). However, this Court believes Kentucky would follow the majority trend and apply comment k on a case-by-case basis. Based solely on the plaintiffs' complaint, Elidel's proclaimed benefit – treatment of eczema, a non-fatal skin condition – is vastly outweighed by the alleged risk of skin cancer.

**III. ANALYSIS**

A. <u>Effect of Comment K</u>

Comment k is an exception to the general rule of strict liability in products liability actions. It states:

> *k. Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines and the like, many of which for this very reason cannot legally be sold except to physicians, or

> under the prescription of a physician. It is also true
> in particular of many new or experimental drugs as to
> which, because of lack of time and opportunity for
> sufficient medical experience, there can be no assurance
> of safety, or perhaps even of purity of ingredients, but
> such experience as there is justifies the marketing and
> use of the drug notwithstanding a medically recognized
> risk. The seller of such products, again with the
> qualification that they are properly prepared and
> marketed, and proper warning is given, where the
> situation calls for it, is not to be held to strict
> liability for unfortunate consequences attending their
> use, merely because he has undertaken to supply the
> public with an apparently useful and desirable product,
> attended with a known but apparently reasonable risk.

Restatement (Second) of Torts § 402A cmt. k (1965). "[T]he fact that a particular drug might produce unfortunate side effects makes it 'unavoidably unsafe' but not '*unreasonably* dangerous' (emphasis added), and strict liability will not obtain if 'proper warning is given, where the situation calls for it.'" *Larkin*, 153 S.W.3d at 761. Kentucky adopted comment k in *McMichael v. American Red Cross*, 532 S.W.2d 7, 9-11 (Ky. 1975), but has not yet defined comment k's scope.

B.  Scope of Comment K

A number of courts have considered the scope of comment k in the context of prescription drugs. Some have held that comment k applies to all prescription drugs,[2] while others have determined

---

[2] Courts in the following jurisdictions have taken this broad view of comment k: Alabama, *Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301, 1303 (Ala. 1984 ), *Tatum v. Schering Corp.*, 795 F.2d 925 (11th Cir. 1986); California, *Brown v. Superior Court*, 751 P.2d 470, 481 (Cal. 1988); Maryland, *Fellows v. USV Pharmaceutical Corp.*, 502 F. Supp. 297, 300 (D.C. Md. 1980); Oklahoma, *Edwards v. Basel Pharmaceuticals*, 933 P.2d 298, 300 (Okl.

4

that comment k's application must be determined on a case-by-case basis.[3]

The California Supreme Court provided the following policy reasons for applying comment k to all prescription drugs:

> It seems unjust to grant the same protection from liability to those who gave us thalidomide as to the producers of penicillin. If some method could be devised to confine the benefit of the comment k negligence standard to those drugs that have proved useful to mankind while denying the privilege to those that are clearly harmful, it would deserve serious consideration. But we know of no means by which this can be accomplished without substantially impairing the public interest in the development and marketing of new drugs, because the harm to this interest arises in the very process of attempting to make the distinction.

---

1997); Texas, *Hackett v. G.D. Searle & Co.*, 246 F. Supp. 2d 591, 595 (W.D. Tex. 2002); Utah, *Grundberg v. Upjohn Co.*, 813 P.2d 89, 94-95 (Utah 1991).

[3] The following courts have taken the narrower view of comment k: Arkansas, *Hill v. Searle Laboratories, Div. of Searle Pharmaceuticals, Inc.*, 884 F.2d 1064, 1069 (8th Cir. 1989), *West v. Searle & Co.*, 806 S.W.2d 608, 612 (Ark. 1991); Florida, *Amore v. G.D. Searle & Co., Inc.*, 748 F. Supp. 845, 854 (S.D. Fla. 1990); Idaho, *Toner v. Lederle Laboratories*, 732 P.2d 297, 306 (Id. 1987); Indiana, *Singer v. Sterling Drug, Inc.*, 461 F.2d 288, 290-91 (7th Cir. 1972); Kansas, *Graham v. Wyeth Laboratories, Div. of American Home Products Corp.*, 666 F. Supp. 1483, 1496-97 (D. Kan. 1987); Minnesota, *Kociemba v. G.D. Searle & Co.*, 680 F. Supp. 1293, 1301 (D. Minn. 1988); Missouri, *Pollard v. Ashby*, 793 S.W.2d 394, 400 (Mo. App. 1990); Nebraska, *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 836-40 (Neb. 2000) (overruling *McDaniel v. McNeil Laboratories, Inc.*, 241 N.W.2d 822 (Neb. 1976)); New Hampshire, *Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 657 (1st Cir. 1981); New Jersey, *Ferrigno v. Eli Lilly & Co.*, 420 A.2d 1305, 1318 (N.J. Super. 1980); Ohio, *White v. Wyeth Laboratories, Inc.*, 533 N.E.2d 748, 752 (Oh. 1988); Oregon, *Senn v. Merrell-Dow Pharmaceuticals, Inc.*, 751 P.2d 215, 218 fn. 4 (Or. 1988); Rhode Island, *Castrignano v. E.R. Squibb & Sons*, 546 A.2d 775, 781 (R.I. 1988)

*Brown*, 751 P.2d at 481. Utah was "troubled by the lack of uniformity and certainty inherent in the case-by-case approach and [feared] the resulting disincentive for pharmaceutical manufacturers to develop new products" and further relied on "[prescription drugs'] unique nature and value, the elaborate regulatory system overseen by the FDA, [and] the difficulties of relying on individual lawsuits as a forum in which to review a prescription drug's design" in determining that comment k applied to all prescription drugs. *Grundberg*, 813 P.2d at 94-95.

While these policy concerns are justified, this Court agrees with the majority position that the case-by-case analysis is better supported by the language of comment k. Rather than simply state that all prescription drugs are unavoidably unsafe, the drafters of comment k explained that unavoidably unsafe products "are especially common in the field of drugs." Restatement (Second) of Torts § 402A, cmt. k. According to the Eighth Circuit,

> The drafters of comment k did not intend to grant all manufacturers of prescription drugs a blanket exception to strict liability. Such an exception was proposed at the American Law Institute meeting where section 402A and comment k were adopted, but this proposal was defeated. 38 ALI Proc. 19, 90-98. The language of comment k suggests that only exceptional products, albeit such exceptional products are more likely to be found in the field of prescription drug products, should be excluded from the strict liability provisions. But more importantly, the example given – the vaccine for the Pasteur treatment of rabies – suggests that only special products, those with exceptional social need, fall within the gamut of comment k.

*Hill v. Searle Laboratories*, 884 F.2d at 1069.

6

Perhaps partly due to the concerns expressed by the California and Utah courts, most courts do not construe comment k so narrowly. The most common approach is to extend comment k protection when the apparent benefits of the drug exceed the apparent risks, given the scientific knowledge available when the drug was marketed. *West v. Searle & Co.*, 806 S.W.2d at 612; *Toner*, 732 P.2d at 306; *Pollard*, 793 S.W.2d at 400; *Hoffman-La Roche*, 618 N.W.2d at 836; *Ferrigno*, 420 A.2d at 1319; *Castrignano*, 546 A.2d at 781.

Helpful factors include (1) the drug's overall usefulness and benefit; (2) the likelihood and seriousness of injury; (3) the availability of a substitute product at the time of sale and distribution; (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness; and (5) the expense involved in eliminating the unsafe character of the product. *Ferrigno*, 420 A.2d at 1319. This Court may also consider (1) whether "the product was intended to confer an exceptionally important benefit that made its availability highly desirable;" (2) whether the risk posed by the product was "substantial and unavoidable;" and (3) "whether the interest in availability (again measured as of the time of distribution) outweighs the interest in promoting enhanced accountability through strict liability design defect review." *Graham*, 666 F. Supp. at 1496.

Since this case-by-case analysis of comment k is highly fact-

7

dependent, at least one court has held that it should be considered by a trial court only after a full evidentiary hearing. *Senn*, 751 P.2d at 218; *see also Ferrigno*, 420 A.2d at 1319 ("[T]he trial judge shall first determine whether a balanced consideration of the foregoing factors would preclude liability as a matter of law. If not, the same factors shall be submitted to the jury to decide a just result between the parties").

This Court joins the majority in holding that the "unavoidably unsafe products doctrine" does not provide blanket immunity from strict liability to all prescription drugs. At this stage, the cancer risk allegedly posed by Elidel appears to vastly outweigh the benefit of treating eczema.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED:**

(1) NPC's motion to dismiss Plaintiffs' claims for strict liability and negligence [Record No. 83] be, and the same hereby is, **DENIED.**

(2) Defendants are directed to answer Plaintiffs' Second Amended Complaint by December 27, 2006.

This the 7th day of December, 2006.



Signed By:
*Joseph M. Hood*
United States District Judge

9