Eastern District of Kentucky
FILED
JUL 2 3 2007
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

CIVIL ACTION NO. 05-527-JMH

PHILIP C. WEISS, ET AL.,                                                                                PLAINTIFFS

V.        **MEMORANDUM OPINION AND ORDER**

ASTELLAS PHARMA, US, INC., ET AL.,                                                        DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

This is a products liability action. Plaintiffs Philip C. Weiss and Cassandra Weiss, his wife, bring this action against defendants Astellas Pharma, US, Inc. ("APUS") and Novartis Pharmaceuticals Corporation ("NPC"), alleging that as the result of using defendants' products, Elidel and Protopic,[1] which were prescribed for him by his dermatologist for treatment of a skin condition, atopic dermatitis, plaintiff Philip C. Weiss ("Weiss") developed cutaneous T-cell lymphoma. Specifically, plaintiffs allege that beginning in November of 2003 through November of 2004, Weiss used and applied both Elidel and Protopic, as prescribed by his physician, and that on or about December 3, 2004, Weiss was diagnosed with cutaneous T-cell lymphoma.

Plaintiff Philip C. Weiss asserts claims against defendants for negligence, negligent failure to warn, intentional misrepresentation, and strict liability. Plaintiff Cassandra Weiss asserts a claim against defendants for loss of consortium. Plaintiffs seek compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, and costs.

This matter is presently before the court on defendants' motion to compel plaintiff Philip Weiss to execute HIPAA[2]-compliant authorizations permitting defendants' counsel to have *ex parte*

---

[1] Elidel is manufactured by defendant NPC; Protopic is manufactured by defendant APUS.

[2] HIPAA is an acronym for "Health Insurance Portability and Accessibility Act of 1996."

contacts with plaintiff's treating physicians, or, alternatively, to preclude plaintiffs' counsel from having *ex parte* contacts with plaintiff's treating physicians. This motion has been fully briefed and is ripe for review.[3]

## II. DEFENDANTS' MOTION TO COMPEL

As grounds for their motion to compel plaintiff Philip Weiss to execute HIPAA-compliant authorizations permitting defendants' counsel to have *ex parte* contacts with his treating physicians, defendants contend that the *ex parte* contacts they seek are permissible because Kentucky does not have a physician-patient privilege and allows such *ex parte* contacts. Defendants also argue that even if Kentucky recognized a physician-patient privilege, Weiss has waived the privilege by placing his medical condition at issue with the filing of this action and by authorizing the release of his medical records. Additionally, defendants submit that HIPAA permits a physician to disclose the medical information at issue herein. Furthermore, defendants argue that allowing plaintiff's counsel to have *ex parte* contacts and communication with plaintiff's treating physicians, while not also allowing defendants' counsel to have *ex parte* contacts with plaintiff's treating physicians violates defendants' due process rights. Alternatively, defendants assert that if the court does not permit their counsel to have *ex parte* contact with plaintiff's treating physicians, then in order to level the playing field, plaintiff's counsel should also be prohibited from having *ex parte* contact with plaintiff's treating physicians.

In response, plaintiffs object to the foregoing motion, in its entirety, arguing that allowing defendants' counsel to conduct *ex parte* interviews with plaintiff's treating physicians would unnecessarily risk disclosing plaintiff's protected, confidential medical information, which would also be in violation of Kentucky state law, HIPAA, and the regulations promulgated pursuant thereto. Plaintiffs argue that Kentucky's lack of a physician-patient testimonial privilege is not the issue

---

[3] Pursuant to numerical paragraph 1 of the district court's Scheduling Order entered herein on January 24, 2007, all discovery disputes were referred to the Magistrate Judge for resolution. [DE #146].

before the court and that defendants' lengthy discussion of Kentucky's testimonial privileges ignores the real issue at hand, *viz.*, that communications between a physician and patient are confidential communications and that a patient's protected fiduciary relationship with his physician prohibits his physician from disclosing the content of those communications to third parties, and that defendants' argument attempts to confuse these two, separate and distinct issues.

## Discussion/Analysis

Since the court has jurisdiction over this matter by reason of diversity of citizenship, pursuant to 28 U.S.C. § 1332, resolution of the present motion first requires consideration of the extent to which Kentucky law recognizes and protects the confidentiality of the physician/patient relationship; therefore, the court must first look to Kentucky law on that issue. *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938). The duty to ascertain state law on the matter of privileges is established by Rule 501 of the Federal Rules of Evidence, which states in relevant part that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed.R.Evid. 501.

The privileges recognized under Kentucky law are provided in Article Five of the Kentucky Rules of Evidence (KRE). The privileges listed therein include: (1) attorney-client, Rule 503; (2) husband-wife, Rule 504; (3) religious privilege, Rule 505; (4) counselor-client, Rule 506; (5) psychotherapist-patient, Rule 507; and (6) identity of informer, Rule 508. *See* Kentucky Rules of Evidence, Article V., Privileges. Thus, there is no physician-patient privilege in Kentucky, as seen in *Stidham v. Clark,* 74 S.W.3d 719, 727 (Ky. 2002) ("communications made for the purpose of treatment are not privileged at all" under Kentucky law), and Kentucky courts have consistently allowed informal interviews with treating physicians. *See, e.g., Roberts v. Estep,* 845 S.W.2d 544, 547 (Ky. 1993) (there is no Kentucky statute that precludes *ex parte* contact with treating physicians); *Davenport v. Ephraim Mem'l Hosp., Inc.* 769 S.W.2d 56, 62 (Ky. Ct. App. 1988) (affirming the trial court's order allowing informal contacts with treating physicians).

"It has consistently been the expressed policy of the Kentucky Supreme Court to decline to recognize a privilege where it has not been expressed in the general laws of evidence existing in the state or in legislative enactment, except in the most compelling situations." *Williams v. Vulcan-Hart Corp.*, 136 F.R.D. 457, 460 (W.D. Ky. 1991). *See also Stidham*, 74 S.W.3d at 722-23 ("testimonial privileges are generally disfavored and should be strictly construed"); *Haney v. Yates*, 40 S.W.3d 352, 355 (Ky. 2000) ("privileges should be strictly construed, because they contravene the fundamental principle that the . . . public has a right to every man's evidence") (internal citations omitted); *Sisters of Charity Health Sys., Inc. v. Raikes*, 984 S.W.2d 464, 469 (Ky. 1998) (noting that privileges must be strictly construed because they can tilt the legal playing field). Indeed, Kentucky law states that "[e]xcept as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky, no person has a privilege to: . . . (2) [r]efuse to disclose any matter; . . . or (4) [p]revent another from being a witness or disclosing any matter or producing any object or writing." Ky. Rev. Stat. Ann. Rule 501 (2006); *see also Stidham*, 74 S.W.3d at 723 (holding that Kentucky's testimonial privileges are limited to those codified in Kentucky Rule of Evidence 501, and that Rule 501 "includes no provision for common law development of testimonial privileges").

Although the Kentucky legislature has chosen to create privileges in the limited context of psychotherapists (see Ky. Rev. Stat. Ann. Rule 507 (2006)), school or sexual assault counselors (*see id.* at Rule 506), and certain specific diseases (*see id.* at §§ 214.625 (HIV) and 214.420 (sexually transmitted disease records)), it has not promulgated similar protections with respect to physicians, consistent with decades of case law recognizing that no such privilege otherwise exists in Kentucky. *See, e.g., Louisville & N.R. Co. v. Crockett's Adm'x*, 24 S.W.2d 580, 583 (Ky. 1930) (common law rule that neither physician nor patient can claim privilege of refusing to disclose alleged confidential communications between them still in force in Kentucky and has not been changed by statute); *Boyd v. Wynn*, 150 S.W.2d 648, 650 (Ky. 1941); *Williams v. Tarter*, 151 S.W.2d 783, 787-88 (Ky. 1941).

4

Consequently, the Magistrate Judge concludes that the physician-patient privilege does not exist in Kentucky either by common law or statutory enactment. However, a decision on this present motion does not turn solely on state law issues. Resolution of this motion also requires the court to consider the scope and application of the Federal Rules of Civil Procedure, particularly those rules governing discovery.

Given that plaintiff has no substantive state law privilege, the federal court must turn to its own procedural rules in considering defendants' request for *ex parte* contacts with plaintiff's treating physicians. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir. 2007) (in diversity cases, a federal court applies the substantive law of the forum state, but the procedural law of the federal courts); *see also Welch v. La. Power & Light Co.*, 466 F.2d 1344, 1345 (5th Cir. 1972) ("[T]he Supreme Court has established a strong presumption that the federal rules govern, rather than state law, in cases involving arguably procedural matters."); *Patton v. Novartis Consumer Health, Inc.*, No. 4:02-CV-0047-DFH-WGH, 2005 WL 1799509, at *3 (S.D. Ind. July 25, 2005) ("the ground rules for witness interviews are essentially procedural in character and are thus governed by federal law."); *Eve v. Sandoz Pharm. Corp.*, No. IP98-1429-C-Y/S, 2002 WL 32153352, at *2 (S.D. Ind. May 16, 2002) ("[W]hen the issue before the court is not what may be discovered, but how that discovery may be obtained or (in this case) how trial preparation may be conducted, that issue is a matter of federal procedural law."); *Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 208 (S.D. Ind. 1995) (holding that the FRCP "leave to the district court the discretion whether to allow *ex parte* conferences"); *Evertson v. Dalkon Shield Claimants Trust*, No. 82-1021-MLB, 1993 WL 245972, at *1 (D. Kan. June 2, 1993) ("The method for discovering unprivileged material – whether by written interrogatories, requests for admissions, depositions, or *ex parte* interviews – is entirely a matter of procedure governed by the Federal Rules of Civil Procedure"); *Filz v. Mayo Found.*, 136 F.R.D. 165, 170 (D. Minn. 1991) (applying federal law to question whether *ex parte* interviews of treating physicians should be allowed).

5

The Sixth Circuit has repeatedly held "[t]here is no federal physician-patient privilege." *Boddie v. Cranston*, 181 F.3d 99, 1999 WL 313770, at *1 (6th Cir. 1999) (unpublished table opinion); *accord United States v. Perryman*, 14 F. App'x 328, 329 (6th Cir. 2001); *Hancock*, 958 F.2d at 1373. Moreover, the Federal Rules of Civil Procedure do not restrict contact with witnesses to formal mechanisms such as sworn depositions. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) ("informality in the discovery of information is desired"); *Williams v. Rene*, 72 F.3d 1096, 1103 (3d Cir. 1995) (rejecting efforts to restrict *ex parte* interviews with treating physicians, noting the benefits of informal gathering of evidence in lieu of "the more expensive and time-consuming procedure of a formal deposition"); *Patton*, 2005 WL 1799509, at *4 (noting that the Federal Rules "have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak"); *Stewart v. Women in Cmty Serv., Inc.*, No. CV-N-97-234-DWH (PHA), 1998 WL 777997, at *4 (D. Nev. Oct. 7, 1998) (quoting *Felder v. Wyman*, 139 F.R.D. 85, 91 (D.S.C. 1991)) ("Private interviews by attorneys have been recognized as a 'time-honored' method for conducting discovery.").

Numerous federal courts have held that a defendant is entitled to conduct *ex parte* interviews with a plaintiff's treating physicians. *See, e.g., Hancock*, 958 F.2d at 1373 ("Because the federal courts do not recognize a federal physician-patient privilege, appellant's arguments regarding the scope of that privilege must be rejected and the district court's decision [allowing *ex parte* contacts] affirmed"); *Williams*, 72 F.3d at 1103-04 (rejecting argument that defense was required, consistent with local law, to provide notice to plaintiff in advance of *ex parte* contacts with treating physician and holding that "counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made") (internal quotation omitted); *Croskey v. BMW of N. Am.*, No. 02-73747, 2005 WL 4704767, at * 4 (E.D. Mich. Nov. 10, 2005) ("To allow Plaintiff to block the interview [with plaintiff's treating physician] would ... impede Defendant's access to evidence."); *Shots*, 887 F. Supp. at 208 ("Where the plaintiff does not suggest that any other medical condition exists which

merits protection from disclosure, the policy considerations which protect the physician-patient relationship can safely be subverted to those policy considerations which expedite the discovery process."); *Everhart v. Nat'l Passenger R.R.*, No. IP 01-1221-C-H/K, 2003 WL 83569, at *2 (S.D. Ind. Jan. 9, 2003) ("the Court must balance the risks of disclosure of this information with that of the Defendant's right to mount its defenses for trial and to have equal access to pertinent witnesses"); *Felder*, 139 F.R.D. at 91 (*ex parte* conferences between defense counsel and physician permissible in part because "nothing explicit or implicit in" the Federal Rules of Civil Procedure precludes such discovery); *Bryant v. Hilst*, 136 F.R.D. 487, 492 (D. Kan. 1991) (holding that because treating physicians are fact witnesses with non-duplicable information concerning major areas of the action, both parties should have unfettered access); *Thomsen v. Mayo Found.*, No. 4-84-1239, 1986 WL 9159, at *2 (D. Minn. Aug. 20, 1986) (holding that a physician should not "be treated in any manner differently than other non-party witnesses"); *accord Patton*, 2005 WL 1799509, at *5; *Watson v. Olathe Med. Ctr., Inc.*, No. 01-2382-CM, 2002 WL 73395 (D. Kan. Jan. 8, 2002); Eve, 2002 WL 32153352, at *2; *Stewart*, 1998 WL 777997; *Sipes v. United States*, 111 F.R.D. 59 (S.D. Cal. 1986); *Doe v. Eli Lilly Co.*, 99 F.R.D. 126-28 (D.D.C. 1983).

As these courts have recognized, treating physicians are important fact witnesses, and "[a]bsent a privilege, no party is entitled to restrict an opponent's access to a witness, however partial or important to him...." *Id.* at 128; *see also Williams*, 72 F.3d at 1103 ("all parties have a right to interview an adverse party's witnesses"); *Thomsen*, 1986 WL 9159, at *2 ("[I]n the absence of a privilege, each citizen is available within the normal bounds as a witness."); *Sipes*, 111 F.R.D. at 61 ("[Treating] physicians are percipient fact witnesses, and as such, the information and opinions they possess should be freely accessible to both parties ... as would be the case with any other ordinary fact witness.").

For all of the foregoing reasons, the Magistrate Judge concludes that defendants' counsel should be permitted to have *ex parte* contact with plaintiff's treating physicians and to conduct *ex parte* interviews with these treating physicians, *but only if these treating physicians are willing to*

7

*be interviewed by defendants' counsel.* Private interviews permit investigation and preparation of possible defense theories without revealing potential work product. The presence of plaintiff's counsel during these witness interviews could cause "interference and disruption." *Filz*, 136 F.R.D. at 169 n.7; *see also Williams*, 72 F.3d at 1103 (defendant had right to interview treating physician "without the presence or consent of opposing counsel") (internal quotation omitted); *Doe*, 99 F.R.D. at 128-29 (presence of plaintiff's counsel during interviews of physicians unfairly enables plaintiff "to monitor [defendant's] progress ... while his own preparation is under no such scrutiny"). Further, interviews are less burdensome and more cost-effective than depositions in obtaining information from treating physicians. *See, e.g., Williams*, 72 F.3d at 1103.

The Magistrate Judge is unpersuaded by plaintiff's argument that the fiduciary relationship he has with his treating physicians prohibits the *ex parte* interviews defendants seek to conduct with his treating physicians. While it is true that plaintiff has a fiduciary relationship with his treating physicians and that plaintiff's medical records are confidential, with the filing of this lawsuit, plaintiff has placed his medical condition at issue; therefore, as evidenced by the authorizations plaintiff has executed permitting the release of his medical records to the defendants, the Magistrate Judge concludes that the defendants are authorized to receive plaintiff's medical records that are relevant to this case. Hence, defendants' counsel are also authorized to receive these medical records and, for all of the reasons stated above, are free to have *ex parte* discussions with plaintiff's treating physicians, so long as plaintiff's treating physicians are willing to voluntarily confer with defendants' counsel, concerning the medical records that are relevant to this case.

Plaintiff also argues that K.R.S. § 311.595(16) prohibits his treating physicians from disclosing his medical information to defendants. K.R.S. § 311.595(16) provides that any physician who has "willfully violated a confidential communication" may have his or her license suspended or revoked for a period of time. For the following reasons, the Magistrate Judge is unpersuaded by plaintiff's argument that this statute prevents his treating physicians from having *ex parte* communications with defendants' counsel, at least so far as to those portions of plaintiff's medical

8

records that are relevant to this action are concerned: (1) defendants have not asked for the disclosure of plaintiff's communications with his treating physicians; those communications are confidential and should remain confidential; (2) by filing this lawsuit, plaintiff has placed his medical condition at issue and has authorized the release of his medical records; therefore, plaintiff's treating physicians are free to discuss plaintiff's medical records that are relevant to this case with defendants' counsel, and so long as the physician does not disclose plaintiff's communications made to the physician, there is no violation of K.R.S. § 311.595(16).

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to compel plaintiff Philip Weiss to execute HIPAA-compliant authorizations permitting defendants' counsel to have *ex parte* contacts with plaintiff's treating physicians, or, alternatively, to preclude plaintiffs' counsel from having *ex parte* contacts with plaintiff's treating physicians [DE #147] is **DENIED**.

2. Defendants' counsel are free to have *ex parte* contact and communications with plaintiff's treating physicians, so long as plaintiff's treating physicians are willing to voluntarily meet and confer with defendants' counsel, concerning plaintiff's medical records that are relevant to this action.

3. Plaintiff's treating physicians having *ex parte* communications with defendants' counsel would not be a violation of K.R.S. § 311.595(16) so long as plaintiff's communications made to his physicians, which remain confidential, are not disclosed to defendants' counsel.

This 23RD day of July, 2007.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE